# United States Court of Appeals
## For the First Circuit

No. 10-1626

VIDALINA SOTO,

Plaintiff, Appellant,

v.

STATE INDUSTRIAL PRODUCTS, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Carlos R. Paula, with whom Melissa Figueroa Del Valle and
Labor Counsels were on brief, for appellant.
William A. Barnett, with whom Jeffrey M. Williams, Seth A.
Erbe, and Indiano & Williams, P.S.C. were on brief, for appellees.

April 15, 2011

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**. In March 2009, Vidalina Soto filed this employment discrimination suit in federal court, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Puerto Rico law. Soto named as defendants State Industrial Products Corp. and State Chemical Sales Company International, Inc. (together "State Chemical"), which have employed Soto since 1992, their insurance companies, and associated individuals. State Chemical moved to dismiss and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., on the grounds that the dispute was covered by an arbitration agreement.

Soto argued that the arbitration agreement was unenforceable due to a lack of consideration and consent. The district court rejected these arguments and dismissed Soto's complaint without prejudice on March 24, 2010. Soto v. State Chem. Sales Co. Int'l, 719 F. Supp. 2d 189 (D.P.R. 2010). Soto filed a timely appeal.

We affirm the judgment of the district court. We reject Soto's claims that she did not receive valid consideration for signing the arbitration agreement, that her consent was rendered void by the conditions under which she signed the agreement, and that the arbitral costs imposed by the agreement are unconscionable.

-2-

I.

We begin by describing the four documents that State Chemical submitted to the district court with its motion to dismiss and compel arbitration.[1]

The first document, titled "Acknowledgment," states:

I have received and read the alternative dispute resolution program of State Industrial Products ("ADR Program").

I understand that it is a three-step program consisting of:
1.   Internal negotiation;
2.   Mediation conducted by an independent, neutral third party; and
3.   Arbitration before an independent, neutral third party.

I understand that if, I am employed by State Industrial Products prior to January 1, 1996, I will retain all my rights to go to court if I so desire at the conclusion of the ADR program.

Soto signed and dated this document on June 15, 1996.

The second document, titled "Acknowledgment of Attendance and Receipt," states:

---

[1]   State Chemical's initial motion to dismiss for lack of jurisdiction did not ask the district court to compel arbitration, but its reply memo clarified that it sought such relief. The district court's Opinion and Order stated that it granted relief compelling arbitration, but the court's Judgment did not. Soto presents no arguments as to these anomalies. In any event, we may treat a motion to dismiss based on an arbitration clause as a request to compel arbitration when the facts of the case make it clear that the party intended to invoke arbitration. See IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 449 n.10 (1st Cir. 2010); Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004).

-3-

> I acknowledge that on June 15, 1996, I attended a meeting in which State Industrial Product's Dispute Resolution Program was described. I also acknowledge that on this date I received a copy of the State Industrial Products Dispute Resolution Program.

Soto signed and dated this document on June 15, 1996.

The third document, titled "Sales Associate's Employment Agreement," is a written employment contract. It states in two places that Soto's employment is on an "at-will" basis. The contract recites that it is supported by consideration in the form of "the terms and conditions and the mutual covenants herein set forth and such other good and valuable consideration, the receipt of which is hereby acknowledged."

The contract contains an arbitration clause, which is not listed in either the "Company Obligations and Covenants" section or the "Associate Obligations and Covenants" section, but rather is listed in an independent section, titled "Alternative Dispute Resolution," that states a mutual obligation:

> I understand that the Company has a three-step Alternative Dispute Resolution Program for its employees consisting of 1. negotiation, 2. mediation, and 3. final and binding arbitration. In consideration for my employment or continued employment by the Company, I agree that this will be my exclusive means of making any employment-related claim against the Company, as set forth in more detail in the State Industrial Products Dispute Resolution Program, a copy of which I have been provided.

Soto signed this contract on March 1, 2001. It bears Soto's initials on every page, and includes a separately initialed clause in bold stating: "I HAVE READ AND I FULLY UNDERSTAND EACH AND EVERY PROVISION OF THE FOREGOING AND DO HEREBY ACCEPT AND AGREE TO THE SAME." The contract is also initialed and signed by a representative from human resources.

The fourth document is a copy of the ADR Program that is referenced in the documents that Soto signed. This document states that the program has an effective date of January 1, 1996, and that "[c]ontinued employment by the Company after this date is consideration for and constitutes acceptance of this alternative dispute resolution program."

The Program sets out a three-step process. The first step is negotiation. If the parties do not reach a settlement within 30 working days, they proceed to mediation before the American Arbitration Association. If the claim remains unresolved after mediation, the parties go to arbitration under the arbitration clause:

> If the Employment Claim remains unresolved following MEDIATION, the Complainant agrees to promptly submit the Employment Claim to ARBITRATION administered by the American Arbitration Association in Cleveland, Ohio under its Employment Dispute Resolution Rules. . . . The Company agrees to pay one-half of the filing fee and the Complainant agrees to pay one-half of the filing fee to the American Arbitration Association (current filing fee is $500.00). The Company agrees to pay the

arbitrator's fee over and above the filing fee (approximately $750.00/day).

Other relevant provisions of this clause are as follows:

> 1. Procedure
> The ARBITRATION shall take place in a location to be determined by the Company, and the Company shall pay reasonable out-of-pocket travel expenses if any are incurred by the Complainant as a result of the Company's choice of location. . . .
>
> 2. Remedies
> The arbitrator shall have the authority to award whatever remedies would have been available to the employee through a federal court or the courts of the state in which the hearing is held and which he/she determines to be supported by credible, relevant evidence.

Employees who were employed before the effective date of January 1, 1996 do "not waive their right to go into court if they are dissatisfied at the conclusion of the three step program," while those employed after that date waive "the right to take such disputes to court." This aspect of the agreement is explained in a section titled "Effect of Findings," which states:

> If an individual was employed prior to January 1, 1996, the arbitrator's decision shall be final and binding only if both parties so stipulate. If the parties do stipulate that the decision is final and binding, it may be entered in any court having jurisdiction thereof. If the decision is not mutually stipulated to be final and binding, and a court proceeding is instituted, the decision shall be admissible in that proceeding.
>
> If a person is employed on or after January 1, 1996, the arbitrator's decision shall be final and binding, and may be entered in any court having jurisdiction thereof.

Although it is only employees who are initially bound to submit their claims under this Program, the obligations imposed by the Program are mutual. When an employee submits a complaint, State Chemical must comply with the three-phase procedure outlined above, which includes the possibility of a binding arbitral decision.

The only carve-outs are contained in the clause titled "What Disputes Are Covered By This Program," which states that the following claims are not covered: "Worker's compensation claims; Unemployment compensation claims; and Claims by the company for injunctive relief and/or damages including but not limited to unfair competition, trade secrets, or confidential information claims."

The Program expressly preserves the right of an employee to take a complaint to "the appropriate Human Rights Commission, the [Equal Employment Opportunity Commission] or any other government regulatory body."

## II.

Because there is no dispute as to the authenticity of the documents submitted by State Chemical, and "abstract questions as to whether particular disputes do (or do not) come within the four corners of an expressly limited arbitration provision are legal in nature," we review the district court's judgment de novo. Paul

Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 18-19 (1st Cir. 2000).[2]

"The FAA reflects the fundamental principle that arbitration is a matter of contract." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., No. 10-1872, 2011 WL 1139144, at *4 (1st Cir. Mar. 30, 2011) (quoting Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010)) (internal quotation marks omitted). Employers and employees may contractually agree to submit federal claims, including claims under the ADA, to arbitration. Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 149-51 (1st Cir. 1998); see also Gilmer v. Interstate/Johnson Lane Corp, 500 U.S. 20, 35 (1991) (holding that age discrimination claim was subject to compulsory arbitration); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 7 (1st Cir. 1999) (holding that Title VII claim was subject to compulsory arbitration).

---

[2] Soto argues that the district court improperly relied on the arbitration agreement documents, which were outside the scope of her complaint, without treating State Chemical's motion as a Rule 56 motion for summary judgment. However, State Chemical's motion was not based on Rule 12(b)(6) or Rule 12(c), which might have triggered this requirement, but rather was made pursuant to the FAA, 9 U.S.C. § 4. Also, although Soto claims she put material facts into dispute, "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002). Soto's only evidence, her unsworn declaration, did not raise a genuine issue of material fact. Cf. id. at 736 (holding that employee's affidavit that she never saw arbitration program documents did not raise triable issue of fact as to existence of agreement to arbitrate that would preclude compelled arbitration).

"A party seeking to compel arbitration under the FAA must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'"  Dialysis Access Ctr., 2011 WL 1139144, at *4 (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)).  This case turns on the first of these requirements--the validity of the agreement.

The contract law of Puerto Rico "control[s] the determination of whether a valid agreement to arbitrate exists." Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005).  Under Puerto Rico law, there are three elements to a valid contract: "(1) The consent of the contracting parties. (2) A definite object which may be the subject of the contract. (3) The cause for the obligation which may be established." P.R. Laws Ann. tit. 31, § 3391.  "Consent given by error, under violence, by intimidation, or deceit shall be void."  Id. § 3404; see also Dialysis Access Ctr., 2011 WL 1139144, at *7 (discussing requirements of consent).

The central question in this case is whether the arbitration agreement signed by Soto is invalid for lack of consideration (what the quoted statute refers to as "cause for the obligation") or consent.  Soto claims that she did not receive adequate consideration for entering into the agreement, and that

the district court's conclusion otherwise is (1) inconsistent with established Puerto Rico law on consideration for noncompetition agreements, and (2) inconsistent with Puerto Rico Law 80, P.R. Laws Ann. tit. 29, § 185a et seq. ("Law 80"). Soto claims that her consent to the arbitration agreement is void because (1) she signed the documents under threat of losing her continued employment, and (2) she is not fluent in English and did not "fully understand" the content of the documents that she signed. We address these arguments in turn.

A.        Consideration

         1.        Continued Employment

The parties have not cited to us any cases by Puerto Rico courts deciding whether continued employment--which is expressly invoked by the arbitration agreement as consideration for signing it--is valid consideration under Puerto Rico law. Soto advances two arguments as to why it is not.

Her first argument is based on an analogy to Puerto Rico law on noncompetition covenants and the Puerto Rico Supreme Court's decision in Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 1994 P.R.-Eng. 909,262 (1994). That decision, by now Chief Justice Hernández Denton, specified the conditions of validity for noncompetition covenants that place restrictions on an employee's post-employment work. Addressing the issue of consideration, the court stated:

-10-

> [T]he employer shall offer a consideration in exchange for the employee signing the noncompetition covenant. This consideration could consist, for example, of a promotion, additional employment benefits, or the enjoyment of substantial changes of a similar nature in the employment conditions. Adequate consideration could even be that a candidate gets the position he wished for in the company. Mere job tenure, however, will not be admitted as a consideration of the noncompetition agreement.

Id. Soto relies on this statement to argue that continued employment is inadequate consideration for signing an arbitration agreement.[3] We reject this argument for two reasons.

First, Arthur Young does not opine on the consideration needed to support an agreement to arbitrate employment disputes, and its statement about the consideration required for a noncompetition agreement was part of a broader set of requirements that do not apply to other contract clauses.[4] Likewise, the

---

[3] The Arthur Young decision did not specify what was meant by "job tenure" or elaborate on this point, as it held that Vega's promotion was valid consideration for the noncompetition covenant.

[4] For example, the court held that an employer can only impose a noncompetition agreement if its absence would "seriously affect[]" the employer's interests, and that the existence of such interests "depend[s] on whether the employee's position in the company enables him to effectively compete with his employer in the future." Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 1994 P.R.-Eng. 909,262 (1994). The court also held that "the scope of the prohibition must fit the employer's interest, insofar as object, time, and place of the restriction or clients involved is concerned." Id. Specifically, the court held that the "noncompetition term should not exceed twelve months" and "the contract must specify the geographic limits or the clients involved," which "must be strictly limited to that necessary to prevent an actual competition between employer and employee." Id.

-11-

motivations for these restrictions, which have been recognized by many jurisdictions, see generally Ferdinand S. Tinio, Annotation, Sufficiency of Consideration for Employee's Covenant Not to Compete, Entered into After Inception of Employment, 51 A.L.R.3d 825, § 4(a) (2010) (listing cases), are not necessarily applicable to arbitration agreements, see Pine River State Bank v. Mettille, 333 N.W.2d 622, 630 n.5 (Minn. 1983) (stating that the requirements of consideration for noncompetition clauses are different than those for other contract clauses).

Second, while Puerto Rico may impose special restrictions on noncompetition agreements, it is preempted from imposing special restrictions on arbitration agreements. As the Supreme Court has explained, arbitration agreements may not be invalidated "under state laws applicable only to arbitration provisions. . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)) (citations omitted); see also KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees, 184 F.3d 42, 50-52 (1st Cir. 1999).

For these reasons, we reject Soto's invitation to expand the scope of Arthur Young to hold that continued employment cannot constitute valid consideration for an arbitration agreement. Cf.

-12-

Cherena v. Coors Brewing Co., 20 F. Supp. 2d 282 (D.P.R. 1998) (holding that although a non-competition clause failed to satisfy Puerto Rico's requirements of consideration under Arthur Young, a severable non-disclosure clause was enforceable); see also Jimenez v. Island Oasis Frozen Cocktail Co., Inc., No. 09-1748, 2010 WL 3719216 (D.P.R. Sept. 14, 2010) (same).

Soto's second argument, which she raises for the first time on appeal, is that the requirements imposed on employers by Law 80 precludes a finding that continued employment can constitute valid consideration. We bypass her waiver, to evaluate her argument and its underlying premise that Law 80 creates a right to continued employment.

In Puerto Rico, there are specialized statutes that create a right to continued employment in certain contexts. See, e.g., P.R. Laws Ann. tit. 21, § 4560 ("Every regular career employee recruited according to the provisions of this subtitle, who meets the criteria of productivity, efficiency, order and discipline . . . , shall be entitled to permanent employment status."). But Soto is mistaken in characterizing Law 80 as one of them.

Law 80, a statute of general application, applies to "[e]very employee in commerce, industry, or any other business or work place . . . , contracted without a fixed term, who is discharged from his/her employment without just cause." P.R. Laws

Ann. tit. 29, § 185a. Under Law 80, these employees are entitled to a form of severance pay known as a "mesada," which is calculated using a formula based on the employee's salary and years of service.[5] See Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7-9 (1st Cir. 2009) (providing overview of content and purpose of Law 80).

Any claim that Law 80 does more than create a right to severance pay for covered employees is foreclosed by our precedent. See Rodriguez v. E. Air Lines, Inc., 816 F.2d 24 (1st Cir. 1987) (rejecting district court's holding that Law 80 imposed a duty on employers to retain employees with greater seniority when lay-offs became necessary, id. at 25, 28, and holding that "severance pay is the only remedy available under Law 80," id. at 29).

---

[5]     The discharged employee is entitled to:
(a) The salary corresponding to two (2) months, as indemnity, if discharged within the first five (5) years of service; the salary corresponding to three (3) months if discharged after five years (5) and up to fifteen (15) years of service; the salary corresponding to six (6) months if discharged after fifteen (15) years of service.

(b) An additional progressive compensation equal to one (1) week for each year of service, if discharged within the first five (5) years of service; to two (2) weeks for each year of service, if discharged after five (5) years and up to fifteen (15) years of service; to three (3) weeks for each year of service if discharged after fifteen (15) years of service.

P.R. Laws Ann. tit. 29, § 185a.

-14-

Soto concedes that new employment is valid consideration for the execution of an arbitration agreement, see Hadnot v. Bay, Ltd., 344 F.3d 474, 477 (5th Cir. 2003) (holding that offer of at-will employment is valid consideration to support an arbitration agreement), but argues that continued employment is different. For at-will employees, it is hard to see why.

In exchange for Soto's agreement to arbitrate, State Chemical did not invoke its right to terminate her employment--a right that it could have exercised, even without cause, subject to Law 80 remedies. The continued employment of Soto by State Chemical under the new arrangement, which was not obligatory on the part of State Chemical, was sufficient consideration to render the agreement enforceable. Accord Tinder v. Pinkerton Sec., 305 F.3d 728, 734-35 (7th Cir. 2002) (Wis. law); Pomposi v. GameStop, Inc., No. 3:09-cv-340, 2010 WL 147196, at *6 (D. Conn. Jan. 11, 2010) (Conn. law); Baumann v. The Finish Line, Inc., No. 1:08-cv-1385, 2009 WL 2750094, at *4 (S.D. Ind. Aug. 26, 2009) (Ind. law); Heath v. Travelers Cos., No. 08-6055, 2009 WL 1921661, at *5 (D. Minn. July 1, 2009) (Minn. law); Ellerbee v. GameStop, Inc., 604 F. Supp. 2d 349, 354 (D. Mass. 2009) (Mass. law); Fontaine v. Rent-a-Center West, Inc., No. 05-1485, 2006 WL 141606, at *3 (D. Or. Jan. 13, 2006) (Or. law); Durkin v. CIGNA Property & Cas. Corp., 942 F. Supp. 481, 488 (D. Kan. 1996) (Kan. law); Ex parte McNaughton, 728 So. 2d 592, 595-96 (Ala. 1998) (Ala. law); Towles v. United

-15-

HealthCare Corp., 524 S.E.2d 839, 845 n.4 (S.C. App. 1999) (S.C. law).[6]

The fact that State Chemical stated that Soto's continued employment was conditional on her signing of the agreement dispels any possible doubt over whether the consideration received was real. Cf. Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1132 (7th Cir. 1997) (finding that continued employment did not constitute consideration for arbitration agreement when employer had neither promised to continue employment nor stated that employee's status would be uncertain if she did not sign); Advanced Copy Prods., Inc. v. Cool, 363 N.E.2d 1070, 1071 (Ind. App. 1977) (finding that because there was no evidence that an employee's continued employment was dependent upon his signing a noncompetition agreement, continued employment did not constitute consideration to support the covenant).

Absent specific support from the case law of Puerto Rico, we reject Soto's argument that her continued employment did not constitute valid consideration for her signing of the arbitration agreement. But as we explain below, even if Soto were correct on this point, the arbitration agreement would still be enforceable, as it was supported by independent valid consideration.

_____

[6] We are not convinced by those cases that have held otherwise. See, e.g., Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 27-29 (Mo. App. 2008); Piano v. Premier Distrib. Co., 107 P.3d 11, 14-15 (N.M. App. 2004); J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 228 (Tex. 2003).

2.     Bilateral Obligation to Arbitrate

Soto also received, in exchange for her promise to adhere to and be bound by the terms of an ADR Plan that included arbitration, State Chemical's promise to do the same.

"Puerto Rican law provides that 'a bilateral obligation assumed by each one of the parties to the contract, has, as its consideration, the promise offered in exchange.' Both parties must be bound based on 'mutual consideration' that yields either a benefit or a detriment to each party." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001) (citations omitted) (quoting United States v. Perez, 528 F. Supp. 206, 209 (D.P.R. 1981)). Although the parties have not cited to us any cases by Puerto Rico courts applying this basic principle of contract law to agreements to arbitrate, other courts applying the principle have held that the equal obligation of an employee and employer to arbitrate disputes falling in the coverage of an ADR plan "is enough to ensure mutuality of obligation and thus constitute consideration." Seawright v. Am. Gen. Fin. Servs., 507 F.3d 967, 974 (6th Cir. 2007) (Tenn. law); accord Blair v. Scott Specialty Gases, 283 F.3d 595, 603-04 (3rd Cir. 2002) (Pa. law); Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 637 (7th Cir. 1999) (Wis. law); Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 368 (7th Cir. 1999) (Ill. law); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274-75 (4th Cir. 1997) (S.C. law).

In the case before us, the arbitration clause is supported by this type of mutual consideration. Soto was employed prior to January 1, 1996, so an arbitral decision will be "final and binding" and entered in court "only if both parties so stipulate." Because both Soto and State Chemical promise only to forgo a judicial forum in the first instance, and to be bound by the result only if they so stipulate, their promises to arbitrate constitute valid mutual consideration. See Ramirez-Lebron v. Int'l Shipping Agency, Inc., 593 F.3d 124, 132 n.4 (1st Cir. 2010).

The fact that it is the complainant who must submit to arbitrate claims unresolved by mediation does not make the consideration provided by State Chemical illusory. Most jurisdictions do not require that both parties to a contract have identical remedies to satisfy the general requirement of mutuality of obligation, see, e.g., Restatement (Second) of Contracts § 363 cmt. c (1981); 25 Richard A. Lord, Williston on Contracts § 67:40 (4th ed. 2010), and we are aware of nothing in Puerto Rico statutory or case law that requires otherwise, see, e.g., P.R. Laws Ann. tit. 31, § 3391. Further, as we noted earlier, the FAA preempts Puerto Rico from imposing such a requirement applicable only to arbitration provisions. Casarotto, 517 U.S. at 687; Southeastern Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 966-67 (8th Cir. 2009) (discussing FAA preemption of mutuality requirements for arbitration clauses).

-18-

We will not impose mutuality of remedy as a requirement of consideration for arbitration agreements under Puerto Rico law. Accord Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (Cal. law); Blair, 283 F.3d at 604 (Pa. law); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (Pa. law); Michalski, 177 F.3d at 636 (Wis. law); Barker v. Golf U.S.A., Inc., 154 F.3d 788, 791-92 (8th Cir. 1998) (Okla. law); Johnson v. Circuit City, 148 F.3d 373, 378 (4th Cir. 1998) (Md. law); Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs., 656 P.2d 1184, 1185 (Alaska 1983).

We agree with the district court that Soto's agreement to arbitrate was supported by valid consideration.

B.      Consent

We also agree with the district court that the agreement is not unenforceable for lack of consent. Under Puerto Rico law, "[c]onsent given by error, under violence, by intimidation, or deceit shall be void." P.R. Laws Ann. tit. 31, § 3404.

Soto stated in an unsworn declaration that she was told that she would be fired if she did not sign the "Acknowledgment," "Acknowledgment of Attendance and Receipt," and "Sales Associate Employment Agreement;" that she is not fluent in English and did not fully understand the documents; that she requested and was denied the opportunity to meet with a lawyer before signing them; and that she was not provided with copies or translations of the

-19-

documents, even though she requested them.[7]  Soto also stated that she never attended any meeting in which the ADR Program was discussed, and that the first time she saw the program document was in State Chemical's motion to dismiss.  On the basis of this declaration, Soto advances two arguments as to why her consent to the agreement is void.

Soto first argues that her consent to the agreement was induced by threat of job loss, and that this threat constituted intimidation that rendered her consent void.  State Chemical acknowledges that signing the arbitration agreement was a condition of continued employment.  The only question is whether this constitutes intimidation as a matter of law.

As defined under Puerto Rico law, "[i]ntimidation exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants."  Id. § 3406.  Because Soto does not claim that State Chemical made any threat of injury to her

---

7       This declaration was roughly made pursuant to 28 U.S.C. § 1746, which states: "Wherever . . .  any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury . . . ."  Id.

person, and she has made no showing that she had a property interest in her at-will employment, she can make no viable claim that she was intimidated under the meaning of Puerto Rico law. Cf. Stereo Gema, Inc. v. Magnadyne Corp., 941 F. Supp. 271, 276 (D.P.R. 1996) (finding that consent was not rendered void by the fact that party did not speak English or understand the contract, which was written in English; that he declared that he would not have signed agreement if he had been aware of the disputed clause; and that he was told that if he did not sign the agreement, he would lose the contract).

Soto's next argument is that Law 80 makes it illegal for State Chemical to threaten to fire her for refusing to sign the agreement. She argues that because refusal to sign does not constitute "just cause" for dismissal under the law, it was illegal for State Chemical to make her continued employment conditional on her signing of the agreement. But as we have already explained, Law 80 does not make it illegal for State Chemical to fire Soto without just cause. As such, an arbitration agreement is not made unenforceable by Law 80 merely because signing it was a condition of continued employment. Cf. Rosenberg, 170 F.3d at 17 (holding that although signing arbitration agreement was condition of employment, agreement was not void for unconscionability).

Soto's final argument is that her consent was void because she is not fluent in English and did not "fully" understand

-21-

the contents of the documents that she signed. This amounts to an argument that she consented in error under P.R. Laws Ann. tit. 31, § 3404. However, an error can only invalidate consent if it is excusable, which it is not "when the ignorance of the true state of things is due to negligence or fault of the one who invokes it." Citibank Global Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (quoting Capo Caballero v. Ramos, 83 D.P.R. 650 (1961)) (internal quotation marks omitted).

Here, the facts alleged by Soto make it clear that any error in her understanding of the contract is not excusable. In 1996, Soto signed two documents acknowledging that she had been given a copy of the ADR Program document, that she understood it, and that she agreed to it. And in 2001, she again signed a contract agreeing to the terms of the Program. She now alleges that she never received a copy of the Program. Under Puerto Rico law, "the onus was on her" to obtain and read a copy before signing it. Rodriguez-Bird v. Santander Sec. Corp., No. 09-2238, 2010 WL 2541708, at *2 (D.P.R. June 17, 2010).

Further, it is a general and well established principle of contract law that "one who is ignorant of the language in which a document is written, or who is illiterate," may be bound to a contract by negligently failing to learn its contents. 1 Richard A. Lord, Williston on Contracts § 4:19 (4th ed. 2010) (footnote omitted); see also N.Y. Life Ins. Co. v. Kwetkauskas, 63 F.2d 890,

-22-

891 (3d Cir. 1933) (recognizing principle); <u>Stern</u> v. <u>Moneyweight Scale Co.</u>, 42 App. D.C. 162, 165 (D.C. Cir. 1914) (same); <u>Chicago, St. P., M. & O. Ry. Co.</u> v. <u>Belliwith</u>, 83 F. 437, 439-40 (8th Cir. 1897) (same). "In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." <u>Morales</u> v. <u>Sun Constructors, Inc.</u>, 541 F.3d 218, 222 (3d Cir. 2008); <u>see</u> <u>also</u> <u>id.</u> 222-23 (listing cases).

The fact that Soto did not "fully" understand the agreements that she signed because of her lack of fluency in English, of which she was aware, does not render void her consent to arbitrate. <u>Cf.</u> <u>Herman</u> v. <u>Hogar Praderas de Amor, Inc.</u>, 130 F. Supp. 2d 257, 262-63 (D.P.R. 2001) (rejecting challenge to the validity of a waiver even though the document was written in English, which the signing party did not understand, and the other party did not explain its contents in the meeting at which it was signed); <u>see</u> <u>also</u> <u>Sanchez-Santiago</u> v. <u>Guess, Inc.</u>, 512 F. Supp. 2d 75, 79-80 (D.P.R. 2007).

C.       <u>Unconscionability</u>

Soto makes an argument to this court on appeal, which was not made to the district court, that the terms of the arbitration agreement are so unreasonable that they should not be enforced. We bypass, in part, her waiver and reject this claim.

-23-

Soto argues that the agreement imposes excessive arbitration fees that will have the effect of preventing her from making any claims against State Chemical. There is nothing in the record that supports this argument. The filing fee that Soto paid to file this federal court action in 2009 was $350. By contrast, the Program states that if a claim proceeds to arbitration, the employee "agrees to pay one-half of the filing fee to the American Arbitration Association (current filing fee is $500.00)." And under the current AAA rules for disputes arising out of employer-promulgated plans, the fees would be even less: "In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $925 is payable in full by the employer, unless the plan provides that the employer pay more."

The arbitration scheme does not require Soto to pay for the time spent by the decision maker. The Program clearly states that the "Company agrees to pay the arbitrator's fee over and above the filing fee (approximately $750.00/day)." Soto claims that this language is ambiguous and may be read as requiring that she pay the arbitrator's daily fee up to an amount equal to the filing fee. We are not persuaded by this reading of the clause, and in any event, State Chemical is bound by its representations to this court that Soto would pay no more than one-half of the AAA filing fee.

Soto also argues that State Chemical could choose to have the arbitration located in Cleveland, Ohio, which would also impose prohibitive costs and prevent her from making a claim. Although it is true that the Program states that the arbitration "shall take place in a location to be determined by the Company," it also states that "the Company shall pay reasonable out-of-pocket travel expenses if any are incurred by the Complainant as a result of the Company's choice of location." Further, State Chemical is bound by its representation to this court at oral argument that Puerto Rican employment disputes would be arbitrated in Puerto Rico, and that if the arbitration occurred outside of Puerto Rico, State Chemical would pay not only Soto's reasonable expenses, but also those of any witnesses that she needed to bring from Puerto Rico.

Soto presents other arguments to us on appeal that were not presented to the district court. They are waived.

### III.

We affirm the judgment of the district court.