# United States Court of Appeals
## For the First Circuit

No. 10-1638

DIANA SOTO-FONALLEDAS, ET AL.,

Plaintiffs, Appellants,

v.

RITZ-CARLTON SAN JUAN HOTEL SPA & CASINO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Thompson, Circuit Judges.

Juan Rafael Gonzáles Muñoz, with whom Maria E. Margarida Franco, Gonzáles Muñoz Law Offices, PSC, Carlos M. Vergne, and Law Offices of Carlos M. Vergne were on brief, for appellants.
Radamés A. Torruella, with whom Patricia M. Marvez-Valiente and McConnell Valdés LLC were on brief, for appellee.

May 4, 2011

**LYNCH**, **Chief Judge**.    On September 30, 2009, Diana Soto-Fonalledas ("Soto"), her husband, and their conjugal partnership filed an employment discrimination suit against the Ritz-Carlton San Juan Hotel, Spa & Casino in federal court.  The complaint alleged discrimination on the basis of sex and disability and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and various Puerto Rico laws.

The Ritz-Carlton filed a motion to dismiss and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., on the grounds that the dispute was covered by an arbitration agreement.  Soto's opposition argued that the arbitration agreement invoked by the Ritz-Carlton was invalid and unenforceable on several grounds.

The district court granted the Ritz-Carlton's motion to compel arbitration and dismissed all of the claims in the complaint, without prejudice to Soto filing the claims under Puerto Rico law in Commonwealth courts.  Soto-Fonalledas v. Ritz Carlton San Juan Hotel Spa & Casino, No. 09-2005, 2010 WL 1328944, at *4 (D.P.R. Mar. 26, 2010).  Soto filed a timely appeal.

We affirm the judgment of the district court, albeit on different reasoning.

In support of its motion to compel, the Ritz-Carlton argued that arbitration was required by its employment agreement, which it submitted in English together with a receipt for the Spanish version of the agreement that had been signed by Soto on August 8, 2001. Within days of filing its motion to compel, the Ritz-Carlton filed a copy of the Spanish version of the agreement mentioned in its motion, as instructed by the district court.

The Ritz-Carlton's employee agreement outlines the rights and obligations of its employees. One section of the agreement identifies a three step alternative dispute resolution process that employees must follow to resolve workplace incidents before filing a lawsuit or administrative action. The first step requires that the employee discuss the incident in an informal open door process with his or her supervisor, manager, division head, and general manager. Under the second step, the employee must, with some exceptions, request a more formal review of the matter by a panel of coworkers. The third step requires that the employee submit to arbitration claims of discrimination or termination on the basis of age, color, sex, religion, national origin, sexual orientation, marital status, or disability.

In Soto's opposition to the motion to compel arbitration, she did not challenge the Ritz-Carlton's claim that she had signed an agreement to arbitrate, but rather argued that the Ritz-Carlton

had not met its burden of demonstrating that a "valid agreement" existed. Challenging the terms and conditions, rather than the existence, of the agreement, she argued that it was invalid and unenforceable because: (1) it deprived her of her Title VII and ADA remedies; (2) the Ritz-Carlton did not provide her with a copy of the governing AAA rules; (3) she did not receive consideration for the agreement; (4) the clause did not provide adequate notice that she was agreeing to arbitrate statutory employment discrimination claims; and (5) the contract imposed a probationary period that violated Puerto Rico law. Only some of these claims are asserted on appeal.

## II.

Because abstract questions of "whether particular disputes do (or do not) come within the four corners of an expressly limited arbitration provision are legal in nature," we review the district court's grant of the motion to compel arbitration de novo. Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 18-19 (1st Cir. 2000). We "may affirm its order on any independent ground made manifest by the record." InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

A party who is seeking to compel arbitration must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes

within the clause's scope." <u>Dialysis Access Ctr., LLC</u> v. <u>RMS Lifeline, Inc.</u>, No. 10-1872, 2011 WL 1139144, at *4 (1st Cir. Mar. 30, 2011) (quoting <u>InterGen</u>, 344 F.3d at 142) (internal quotation marks omitted).  At issue here is only the first requirement--the validity of the agreement.

Under Section 2 of the FAA, a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has stated that "the FAA was designed to promote arbitration," <u>AT&T Mobility LLC</u> v. <u>Conception</u>, No. 09-893, slip op. at 11 (U.S. Apr. 27, 2011), and that "Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," <u>Buckeye Check Cashing, Inc.</u> v. <u>Cardegna</u>, 546 U.S. 440, 443 (2006).

In challenging the agreement's validity, Soto advances just three of the arguments that she made to the district court. She argues that the arbitration agreement is unenforceable because she did not receive any consideration for signing it; because she did not receive adequate notice of which claims would be subject to arbitration; and because the agreement deprives her of remedies granted by Title VII and the ADA.

Soto grounds her remedies-based argument on a certified English translation of the Spanish version of the arbitration agreement submitted for the first time on appeal. She argues that there is a material difference between certain language of the Spanish version--for which she admits signing a receipt--and the language of the English version on which the district court based its decision.[1]

Although as a rule this court will not consider translations of documents provided on appeal that were not part of the record before the district court, Gonzalez-De-Blasini v. Family Dept., 377 F.3d 81, 88 (1st Cir. 2004); Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 3 (1st Cir. 2004), we retain the discretion to waive this requirement, cf. United States v. Catalan-Roman, 585 F.3d 453, 464 n.10 (1st Cir. 2009); United States v. Colon-Munoz, 192 F.3d 210, 223 n.22 (1st Cir. 1999). Here, we waive the requirement in the interest of judicial economy. Taking Soto's newly offered English translation of the Spanish version of the agreement as the controlling document, we find as a matter of law that the claims made by Soto on the basis of this translation do not require reversal of the district court's judgment.

---

[1] Neither the Ritz-Carlton nor Soto provided the district court with a certified English translation of the Spanish version of the agreement, nor did Soto put the district court on notice that there was a reason not to rely on the English version submitted by the Ritz-Carlton.

A.          Validity of Consideration

The FAA represents "the fundamental principle that arbitration is a matter of contract," Dialysis Access, 2011 WL 1139144, at *5 (quoting Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010)) (internal quotation mark omitted), and in general, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists," Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005).  Under Puerto Rico contract law, "'a bilateral obligation assumed by each one of the parties to the contract, has, as its consideration, the promise offered in exchange.'  Both parties must be bound based on 'mutual consideration' that yields either a benefit or a detriment to each party." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001) (citations omitted) (quoting United States v. Perez, 528 F. Supp. 206, 209 (D.P.R. 1981)).

Soto argues that the district court erred in holding that, in return for signing the agreement, she received valid consideration in the form of an offer of continued employment.  She argues that the Ritz-Carlton never made such an offer, and that in any event, it would not constitute valid consideration under Puerto Rico law.  We need not address this issue, as the arbitration clause contains two sets of bilateral obligations that independently constitute valid consideration for the agreement.

-7-

The agreement expressly invokes one set of bilateral obligations. It states that in exchange for Soto's "agree[ment] that [she] will not initiate any legal action whatsoever" without first using each step in the company's alternative dispute resolution process, the Ritz-Carlton "agrees to suspend all jurisdictional prescriptive terms and limitations to file grievances and/or lawsuits" for the period that the process lasts. This waiver of defenses by the Ritz-Carlton for any claims covered by its alternative dispute resolution process constitutes valid consideration for Soto's promise to submit her discrimination claims against the Ritz-Carlton to arbitration.

Further, implicit in the arbitration agreement is a second set of bilateral obligations. Both parties are required to arbitrate Soto's claims, which constitutes independent mutual consideration. See Soto v. State Indus. Prods., Inc., No. 10-1638, 2011 WL 1447757, at *7-8 (1st Cir. Apr. 15, 2011) (holding that bilateral obligation to arbitrate constitutes mutual consideration under Puerto Rico law).[2]

_____

[2] Soto also advances a second argument under Puerto Rico contract law. She argues that the Spanish version of the employee agreement imposed a probationary period on her employment, almost four years after she began to work for the Ritz-Carlton, which rendered the entire agreement void under a provision of Puerto Rico law that states that "[e]very probatory work contract agreed upon after the employee starts to render services shall be null and void." P.R. Laws Ann. tit. 29, § 185h. As this argument is only made briefly in a footnote on appeal, it is waived. See Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999) ("We have repeatedly held that arguments raised only in a

B.        Availability of Remedies Under the Arbitration Agreement

        Although the enforceability of an arbitration clause often turns on state contract law, there is, at times, an additional requirement that "grows out of the principle that while federal statutory claims can come within an arbitration agreement that is enforceable pursuant to the FAA, some federal statutory claims may not be appropriate for arbitration." Campbell, 407 F.3d at 552 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)).  Here, "the burden is on the party resisting arbitration to show (by means of statutory text, legislative history, or some inherent conflict between arbitration and the statute's purposes) that Congress, in enacting a particular statute, intended to preclude a waiver of a judicial forum for certain statutory claims." Id. (citing Gilmer, 500 U.S. at 26).

        This court has previously held that employers and employees may agree to submit Title VII and ADA claims to arbitration and that this does not violate congressional intent. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d

---

footnote or in a perfunctory manner are waived.").  But even if it were not waived, the argument about the probationary period would still fail, as it does not go to the merits of the question before us.  "As a matter of federal law, the arbitration clause is unaffected even if the substance of the contract is otherwise void or voidable." Sleeper Farms v. Agway, Inc., 506 F.3d 98, 103 (1st Cir. 2007); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., No. 10-1872, 2011 WL 1139144, at *12 (1st Cir. Mar. 30, 2011).

1, 7-12 (1st Cir. 1999); <u>Bercovitch</u> v. <u>Baldwin Sch., Inc.</u>, 133 F.3d 141, 148-51 (1st Cir. 1998).  Soto is bound by these holdings.

She argues, however, that her arbitration agreement is unenforceable because in her view it impermissibly deprives the arbitrator of power to grant all of the remedies available under Title VII and the ADA.  <u>Cf.</u> <u>Awuah</u> v. <u>Coverall N. Am., Inc.</u>, 554 F.3d 7, 12 (1st Cir. 2009) ("If arbitration prevents plaintiffs from vindicating their rights, it is no longer a 'valid alternative to traditional litigation.'" (quoting <u>Kristian</u> v. <u>Comcast Corp.</u>, 446 F.3d 25, 37 (1st Cir. 2006))).  Soto bases this challenge on the fact that the Spanish language agreement states that if the arbitrator rules in her favor, she "may be reinstated or granted another remedy according to the rules of [the] Ritz-Carlton San Juan," and that the arbitrator "will be authorized to impose any remedy that the Ritz-Carlton, San Juan rules allow."  Soto argues that these provisions allow the Ritz-Carlton to define and limit the remedies available in arbitration.  But as Soto does not point to any "rules" so limiting the remedies and the meaning of these provisions is not otherwise clear on their face, Soto's challenge fails under controlling Supreme Court and First Circuit precedent.

The Supreme Court has made it clear that when a party challenges an arbitration agreement on the grounds that the agreement will prevent the party from vindicating his or her statutory rights, and the party's claim turns on a construction of

-10-

ambiguous terms of the agreement, the challenge does not present a "question of arbitrability" to be decided by a court, but rather an issue of contract interpretation to be resolved in the first instance by an arbitrator. See PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407 (2003); see also Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003) (plurality opinion) ("The question here--whether the contracts forbid class arbitration-- . . . should be for the arbitrator, not the courts, to decide."); Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 541 (1995) (holding that the question "must be decided in the first instance by the arbitrator").

The Supreme Court's decision in PacifiCare is instructive. There, the Court faced a potential conflict between an arbitration agreement that prohibited punitive damages and statutory language entitling the plaintiff to treble damages. See PacifiCare, 538 U.S. at 403. The Court rejected plaintiff's claim that this conflict made the agreement unenforceable, explaining that it would not, "on the basis of 'mere speculation' that an arbitrator might interpret . . . ambiguous agreements in a manner that casts their enforceability into doubt, take upon [itself] the authority to decide the antecedent question of how the ambiguity is to be resolved." Id. at 406-07. Reasoning that an arbitrator could interpret the agreement to avoid a direct conflict, the Court found no question of arbitrability and compelled arbitration. See

id. at 407 ("[S]ince we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. . . . [T]he proper course is to compel arbitration.").

In Anderson v. Comcast Corp., 500 F.3d 66 (1st Cir. 2007), this court followed Pacificare, holding that although there were "direct conflicts" between an arbitration agreement's multiple damages prohibition and a statute's multiple damages provision, the conflicts did not raise a question of arbitrability because one of the conflicts would only emerge under certain factual findings, and the other turned on an interpretation of state law. Id. at 72-75. Likewise, in Kristian, we explained that when a vindication of statutory rights claim is based on an ambiguity in "the scope of a remedies limitation of an arbitration agreement," it is the arbitrator who should "decide the question of enforceability in the first instance." Kristian, 446 F.3d at 45; see also Skirchak v. Dynamics Research Corp., 508 F.3d 49, 56 (1st Cir. 2007) ("[W]hen claims are submitted to arbitration, the question of whether class arbitration is forbidden is not a question of arbitrability, but initially a question of contract interpretation and should be

decided in the first instance by an arbitrator." (footnote omitted)).[3]

Applying this framework, we find that Soto's challenge fails, as what is meant by the contract's references to the "rules" of the Ritz-Carlton is ambiguous and open to different constructions. These include constructions under which there would be no conflict between the remedies available in arbitration and those provided by the ADA and Title VII.

The arbitrator could interpret the agreement's reference to remedies "according to the rules of [the] Ritz-Carlton" to be the same as the remedies "consistent with the laws governing The Ritz-Carlton," which is the language in the original English version. Those laws governing the Ritz-Carlton include the federal laws at issue here. Supporting this interpretation is the Ritz-Carlton's argument that the original English version contains the parties' obligations and that the reference to "rules" is just a sloppy translation error in translating the English form to Spanish.

---

[3] Other circuits have adopted a similar approach. See Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 81 (D.C. Cir. 2005) (holding that when a party resists arbitration on the grounds that the terms of the arbitration agreement "interfere with the effective vindication of statutory rights," that party "bears the burden of showing the likelihood of such interference," and "this burden cannot be carried by 'mere speculation' about how an arbitrator 'might' interpret or apply the agreement"); see also In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 283 (4th Cir. 2007) (same).

Further, the arbitrator could read the agreement's reference to the "rules" of the Ritz-Carlton as invoking the clause of the agreement that states that the arbitration is to be governed by the rules of the American Arbitration Association (AAA). Under Rule 39(d) of the AAA's Employment Arbitration Rules and Mediation Procedures, the "arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court."

These readings of the ambiguous language would prevent the conflict alleged by Soto. This ends her challenge.

C.        Adequacy of Notice

This court has, based on case-specific factual analysis, found it inappropriate to enforce agreements to arbitrate Title VII and ADA claims when, under the totality of the circumstances, an employee has had no minimal level of notice sufficient to appraise the employee of the arbitral clause. See Campbell, 407 F.3d at 555; Rosenberg, 170 F.3d at 21.

Soto does not deny that she received the agreement or that she signed for it, but nonetheless makes a general argument that the arbitration clause is unenforceable because she received inadequate notice that she was agreeing to arbitrate statutory employment discrimination claims.

Her argument is contradicted by the plain text of the agreement, which identifies the types of claims covered: "I will

-14-

request Arbitration if I have been terminated or feel that I have been discriminated against for reason of my age, color, sex (including sexual harassment and stalking), religion, national origin, sexual orientation, marital status, age or physical or mental defect."  It also clearly identifies the scope and nature of her obligation: "I agree that I will not initiate any legal action whatsoever without using in the first term each step in the Process of Open Appeal and Resolution of Incidents."  Soto's claim is without merit.

### III.

The judgment of the district court is affirmed.