# United States Court of Appeals
## For the First Circuit

No. 11-2468

ANN GOVE,

Plaintiff, Appellee,

v.

CAREER SYSTEMS DEVELOPMENT CORPORATION,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

David A. Strock, with whom Philip Moss and Fisher & Phillips
LLP were on brief, for appellant.
Arthur J. Greif, with whom Gilbert & Greif, P.A. was on brief,
for appellee.

July 17, 2012

**LIPEZ, Circuit Judge**. This case concerns a company's effort to enforce an arbitration clause contained in a job application against an unsuccessful applicant. Appellee Ann Gove filed suit against Career Systems Development Corporation ("CSD") alleging that she was denied a position because of her gender and pregnancy at the time of her application. CSD moved to compel arbitration pursuant to an arbitration clause in Gove's job application, but was rebuffed by the district court. The court concluded that the arbitration clause was ambiguous as to whether disputes between CSD and applicants who were not hired were covered, and that this ambiguity must be construed against CSD.

We affirm the judgment, albeit on somewhat different reasoning.

**I.**

CSD's motion to compel arbitration was made in connection with a motion to dismiss or stay. Accordingly, the following recitation of the facts is drawn from Gove's complaint as well as documents submitted to the district court in support of CSD's motion to compel arbitration. The facts are undisputed.

In May 2008, Gove began working for the Training & Development Corp. ("TDC"), a job training and placement organization, which had a contract to provide services to the Loring Job Corps ("Loring"), a technical career training program. In early April 2009, TDC employees were informed that CSD had been

-2-

awarded the Loring contract and that, beginning May 1, 2009, it would be providing the services previously furnished by TDC. During the transition period, CSD offered all TDC employees currently placed at Loring the opportunity to apply for jobs. Gove chose to do so and, on April 8, 2009, she completed an online application for a position with CSD similar to the one that she held with TDC.

The final section of the application included the following provision:

> CSD also believes that if there is any dispute between you and CSD with respect to any issue prior to your employment, which arises out of the employment process, that it should be resolved in accord with the standard Dispute Resolution Policy and Arbitration Agreement ("Arbitration Agreement") adopted by CSD for its employees. Therefore, your submission of this Employment Application constitutes your agreement that the procedure set forth in the Arbitration Agreement will also be used to resolve all pre-employment disputes. A copy of that procedure is on display in our employment office and a copy [of the] Arbitration Agreement setting forth that procedure will be provided to you.
>
> If you have any questions regarding this statement and the Arbitration Agreement, please ask a CSD representative before acknowledging, because by acknowledging, you acknowledge that you have received a copy of the Arbitration Agreement and agree to its terms. Do not check the Accept box below until you have read this statement.

Directly following this provision was the statement "I accept the terms of the above agreement:  □ Accept."  Gove placed a checkmark in the "accept" box and submitted her job application to CSD.

On April 21, Gove was interviewed by representatives of CSD.  At the time, she was visibly pregnant and due to deliver on May 30.  During the interview, she was asked "How much longer do you have?"  She replied that she was due in about five weeks.  When Gove was also asked whether she had any other children, she informed the interviewer that she had a seven-year-old son.

Gove was not hired by CSD, although CSD continued to have a need for the position she had applied for and continued to advertise for the position.  Subsequently, Gove filed a complaint with the Maine Human Rights Commission ("MHRC"), which found reasonable grounds to conclude that she was denied the position because of her pregnancy.  After the MHRC was unable to persuade the parties to reach a conciliation agreement, Gove filed suit in the United States District Court for the District of Maine, alleging that CSD discriminated against her on account of her gender and her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Maine Human Rights Act, Me. Rev. Stat. tit. 5, §§ 4551-4634.  CSD moved to compel arbitration, arguing that Gove was bound by the arbitration clause in the job application.  The district court, however, found that the arbitration clause was not valid.  It reasoned that the

provision was ambiguous as to whether it covered an applicant such as Gove, who was never hired, and concluded that such an ambiguity must be construed against CSD, the drafter of the agreement. CSD now brings this interlocutory appeal challenging the district court's decision.[1]

## II.

We review both the interpretation of arbitration agreements and orders compelling arbitration (or declining to do so) de novo. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 373 (1st Cir. 2011) (citing South Bay Bos. Mgmt., Inc. v. UNITE HERE, Local 26, 587 F.3d 35, 42 (1st Cir. 2009)). Therefore, we may affirm the district court's order "on any independent ground made manifest by the record." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (internal quotation mark omitted).

In deciding a motion to compel arbitration, a court must ascertain whether: "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." Combined Energies

---

[1] Typically, interlocutory orders are not immediately appealable. See 28 U.S.C. § 1291; see also Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 550 (1st Cir. 2005) (stating same). However, the Federal Arbitration Act creates an exception for orders denying petitions to compel arbitration. 9 U.S.C. § 16(a)(1)(B); see also Campbell, 407 F.3d at 550.

v. <u>CCI, Inc.</u>, 514 F.3d 168, 171 (1st Cir. 2008). As the Supreme Court has explained, it is a "fundamental principle that arbitration is a matter of contract." <u>Rent-A-Center, West, Inc.</u>, v. <u>Jackson</u>, 130 S. Ct. 2772, 2776 (2010). Accordingly, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists." <u>Soto-Fonalledas</u>, 640 F.3d at 475 (internal quotation marks omitted).

In this case, the parties agree that Maine law governs. Under Maine law,

> [a] contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party.

<u>Sullivan</u> v. <u>Porter</u>, 861 A.2d 625, 631 (Me. 2004). Additionally, "[a] contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." <u>V.I.P., Inc.</u> v. <u>First Tree Dev. Ltd. Liab. Co.</u>, 770 A.2d 95, 96 (Me. 2001) (internal quotation marks omitted).

The Maine Law Court has applied to arbitration clauses the "bedrock rule of contract interpretation . . . that ambiguities in a document are construed against its drafter." <u>Barrett</u> v. <u>McDonald Invs., Inc.</u>, 870 A.2d 146, 150-51 (Me. 2005). This rule

-6-

is intended to effectuate the intent of the parties, and is based on the "presum[ption] that [the drafter] will not leave undeclared that which he would claim as his right under the agreement." Id. at 150 (quoting Monk v. Morton, 30 A.2d 17, 19 (Me. 1943)). Language in a contract is ambiguous "if it is reasonably susceptible to different interpretations." Champagne v. Victory Homes, Inc., 897 A.2d 803, 805 (Me. 2006).

The Law Court has explained that "[t]he rationale for interpreting ambiguities against the drafter is particularly compelling in contracts where one party had little or no bargaining power." Barrett, 870 A.2d at 150. Thus, where the parties are in unequal bargaining positions, such as "[w]here a standard-form, printed contract is submitted to the other on a 'take it or leave it' basis, upon equitable principles the provisions of the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position." Id. (internal quotation marks omitted).

## III.

The parties present dueling interpretations of the arbitration clause at issue. As a preliminary matter, we must determine whether this dispute goes to the existence of a valid arbitration agreement between the parties or merely the scope of any such agreement. The district court found that the validity of the agreement itself was called into question. Gove v. Career Sys.

Dev. Corp., 824 F. Supp. 2d 205, 211 (D. Me. 2011). We take a different view. Gove does not dispute that if she had been hired, she would have been obligated to arbitrate disputes stemming from events that occurred prior to her employment. Thus, she is arguing that her employment by CSD is a condition precedent to her obligation to arbitrate. However, the non-occurrence of a condition precedent does not render an agreement invalid. It simply means that the duty to perform does not arise. See Hope Furnace Assocs., Inc. v. F.D.I.C., 71 F.3d 39, 43 (1st Cir. 1995); Restatement (Second) of Contracts § 224 cmt. c (1981). Furthermore, although Gove ostensibly defends the court's conclusion that there is no valid agreement, her briefing belies this defense when she acknowledges that "[the arbitration clause] does not reach a non-employee's application for employment, but only disputes the hired employee has that arise out of her application." Thus, she concedes that the agreement is enforceable in certain circumstances. This concession was apt. This is a dispute concerning the scope of the arbitration clause, not its validity.

Normally, in evaluating the scope of an arbitration agreement, we would give significant weight to the federal policy favoring arbitration and the presumption of arbitrability.[2] See

---

[2] We have often observed that in evaluating an arbitration clause, courts must give due regard to the federal policy favoring arbitration. See Dialysis Access Ctr., 638 F.3d at 376. Pursuant

Dialysis Access Ctr., 638 F.3d at 376.  However, on appeal, CSD has not argued this federal policy, confining itself instead to arguments of contract interpretation under Maine law.  This omission is especially telling because CSD emphasized the federal policy favoring arbitration in its briefing to the district court.  See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (noting that arguments made before a district court, but not pursued on appeal, are deemed abandoned); United States v. Capozzi, 486 F.3d 711, 719 n.2 (1st Cir. 2007) ("We have consistently held that arguments not raised in the initial appellate legal brief are considered waived.").  CSD does mention the federal policy in a block quote in its initial appellate brief, but it makes no argument based on this policy.  We have explained that it is a "'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" United States v. Hughes, 211 F.3d 676, 684 n.6 (1st Cir. 2000) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  The absence of any argument on the federal policy favoring

to this policy, "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." Id. However, this presumption of arbitrability applies only to the scope of an arbitration agreement, not its validity, and thus it is utilized only where an arbitration agreement is "validly formed and enforceable" under state law, but "ambiguous about whether it covers the dispute at hand." Id. (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2858 (2010)).  Maine courts have recognized a similar Maine policy favoring arbitration, but, like federal courts, they apply it only if "the parties have generally agreed to arbitrate disputes." V.I.P., 770 A.2d at 96.

arbitration is consistent with CSD's explicit disavowal of any reliance on rules of construction. After arguing exclusively that the provision is not ambiguous, it concludes its argument concerning the scope of the arbitration clause by asserting that "there is no need to resort to the various rules of construction when the plain language of the agreement is unambiguous." Because CSD has not relied on federal law or explained the interaction of the federal policy favoring arbitration with Maine contract law, we will not consider arguments based on the federal policy that it chose not to make.[3]

Turning to Maine law, we must determine whether the arbitration clause is ambiguous in its coverage of applicants who are not hired. CSD argues that the clause unambiguously covers all disputes between it and applicants for employment. It asserts that "the term 'pre-employment' is widely understood to refer to the

---

[3] We do not dispute the dissent's reading of our precedents concerning the federal policy favoring arbitration. But the dissent attempts to bring these precedents to bear in support of an argument that appellant does not make. To the extent that the dissent suggests that the principle announced in Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006), is unwaivable by a failure to argue it, we disagree. The dissent cites no authority for this proposition and we are not aware of any. Additionally, it is important to understand the interest in fairness underlying our waiver doctrine. Because CSD never developed an argument concerning the federal policy favoring arbitration, Gove, understandably, did not consider the issue to be part of this appeal. Following CSD's lead, Gove's responsive brief argues the case exclusively on grounds of Maine law. Accepting the dissent's invitation to decide the case on grounds not introduced by CSD would be unfair to Gove, who was entitled to rely on CSD's identification of the issues raised in its opening brief.

period of time between the submission of an application and hiring, whether or not someone is hired," and that "employment process" refers to every step of the potential employment relationship between Gove and itself.  It also argues that arbitration clauses are subject to broad interpretation as a matter of Maine law.

In contrast, Gove argues that the clause's references to the "employment process" and "pre-employment disputes" should be read literally.  Under her reading, if one is never employed by CSD, then a dispute cannot be "pre-employment" or related to the "employment process," and the arbitration clause is inapplicable. Gove argues that this reading is particularly appealing to a lay person to whom the phrase "employment process" "clearly meant the process culminating in her hire, a process from which she never benefitted."  See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (noting that under Maine law "[a]mbiguity [of a contract] is to be determined from the perspective of an ordinary or average person").

Importantly, nothing in the arbitration clause refers to "applicants."  Instead, every reference is to "your employment," "the employment process," or "pre-employment disputes." Accordingly, there is a reasonable basis for Gove's belief that she would only be bound by the arbitration clause if ultimately hired. Then, if she had post-hire claims arising out of promises made or actions taken during the hiring process (e.g., claims that she was

-11-

being paid less or given fewer hours than she had been led to believe, or claims that similarly situated male employees were hired to more favorable positions or awarded a higher pay rate), she would be obligated to pursue those claims in an arbitral forum. This reading is consistent with both the arbitration clause in Gove's application and the incorporated Pre-Dispute Arbitration Policy, which identifies covered disputes as including, inter alia, "[a]ll disputes and claims which arise out of or relate in any manner to the Employee's application for employment or employment with the Company." (Emphasis added.) Thus, it can be fairly said that the agreement is susceptible to different interpretations. See Champagne, 897 A.2d at 805.

In Johnson v. Circuit City Stores, 148 F.3d 373 (4th Cir. 1998), the Fourth Circuit considered the enforceability of a dispute resolution agreement compelling arbitration. That case also involved an unsuccessful applicant who sought to avoid an arbitration clause contained in a job application. Although the central issue in Johnson was whether there was adequate consideration supporting the agreement, and not the issue before us now, the case features an agreement that unambiguously binds job applicants. There, the agreement required that the applicant accept the statement "I will be required to arbitrate any and all employment-related claims I may have against Circuit City, whether or not I become employed by Circuit City." Id. at 374. Of course,

-12-

just because the agreement in this case could have been drafted more clearly does not necessarily mean that it is ambiguous as to the obligation to arbitrate in the circumstances of this case. However, the agreement in <u>Johnson</u> offers a useful touchstone for clarity, reinforcing our conclusion that CSD's provision is ambiguous.

Given this ambiguity, we are bound by Maine law's "bedrock rule of contract interpretation . . . that ambiguities in a document are construed against its drafter." <u>Barrett</u>, 870 A.2d at 150. In <u>Barrett</u>, the Law Court considered an arbitration agreement entered into by retirees and their investment advisor. A dispute arose as to whether the agreement's scope included tort claims that had no nexus with the advisor's administration of the retirees' investment account, and the court found the agreement to be ambiguous. Not only did the court construe the ambiguity against the advisor, who had drafted the agreement, but it noted that the rationale for doing so was "particularly compelling" given the unequal bargaining positions of the parties and the fact that the contract was offered to the retirees on a "take it or leave it" basis. <u>Id.</u> at 150-51. This case is similar. Not only was Gove in no position to bargain over the terms of the employment application, but she was also required to accept the arbitration

clause as part of an online job application with no meaningful opportunity to inquire as to its meaning.[4]

To be sure, the Law Court also acknowledged in Barrett that Maine has "a broad presumption favoring arbitration." Id. at 149; see also Anderson v. Banks, 37 A.3d 915, 921 (Me. 2012) (recognizing same). The court noted that this presumption was at odds with the principle of construing ambiguities against the drafter of a contract. However, it resolved this conflict in favor of the latter principle, explaining that "[i]n this context, where an individual with little leverage is entering into an agreement with a larger entity that offers its services on a 'take it or leave it' basis, we conclude that the balance tips in favor of applying the equitable rule favoring the construction of the contract against the drafter." 870 A.2d at 151; cf. Anderson, 37 A.3d at 921 n.9 (noting that, where parties are in approximately equal bargaining positions, the equitable principle of construing a contract against the drafter is less compelling).

Applying Maine contract law, we must follow the Law Court's lead. Because of the obligation under Maine law to construe ambiguities against the drafter of a contract, we conclude

---

[4] The clause does state, "If you have any questions regarding this statement and the Arbitration Agreement, please ask a CSD representative before acknowledging." However, no contact information is provided and, because the application is to be completed online, an applicant may be required to agree to arbitrate before having any contact with a CSD representative.

that Gove is not required to arbitrate her claims.  Therefore, the judgment of the district court is <u>affirmed</u> and the case is remanded for further proceedings consistent with this opinion.

   <u>So ordered</u>.

    **– Dissenting Opinion Follows –**

**TORRUELLA, Circuit Judge (Dissenting).** The panel majority acknowledges that Gove's application for employment at CSD contained a valid agreement to arbitrate. Nonetheless, it concludes that Gove is not required to take her claims to arbitration because principles of Maine contract law -- specifically, the Maine Law Court's fealty to the tenet of contra proferentem[5] for adhesion contracts -- require us to interpret any ambiguity in the scope of the agreement against the drafter (here, CSD). This it reasons, despite the otherwise broad federal principle that doubts about an arbitration clause's scope should be resolved in favor of arbitrability. See Maj. Op. at 8 n.2 (citing Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011)). My colleagues' conclusion is premised on their understanding that CSD effectively waived any arguments based on the federal policy favoring arbitration by limiting its discussion on appeal to questions of contract interpretation under Maine law. Because I do not agree that any such waiver occurred in this case, and because I believe precedent requires us to decide the issue before us in favor of arbitrability, I respectfully dissent.

To begin with, the majority's application of the contra proferentem principle to resolve ambiguities regarding the scope of

---

[5]The contract principle of contra proferentem is a Latin term meaning "against the offeror" and stands for "[t]he doctrine that, in interpreting documents, ambiguities are to be construed unfavorably to the drafter." Black's Law Dictionary 377 (9th ed. 2009).

the arbitration clause against arbitrability is antithetical to a previous holding of this court that is directly on point. In Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006), we reversed an analogous ruling by the U.S. District Court for the District of Massachusetts denying a motion to compel arbitration because, in doing so, the lower court had "incorrectly relied on the [Massachusetts] contract principle requiring contracts of adhesion to be construed strictly against the drafter," id. at 35. We reasoned that, because the plaintiffs were "in fact raising a scope question," i.e., the "[p]laintiffs argue[d] that their antitrust claims d[id] not fall within the scope of the arbitration agreements as a result of non-retroactivity," the general rule applying a "presumption in favor of arbitration" governed. Id. Accordingly, we unequivocally held that "[w]here the federal policy favoring arbitration is in tension with the tenet of contra proferentem for adhesion contracts, and there is a scope question at issue, the federal policy favoring arbitration trumps the state contract law tenet." Id. (second emphasis added). The Kristian panel noted that "[t]his result makes sense because, once the dispute is in arbitration, the tenet of contra proferentem can still be applied by the arbitrator on non-scope issues." Id. at 35 n.7.

Thus, while I fully agree with the majority's threshold conclusion in this case, that we are considering here "a dispute

-17-

concerning the scope of the arbitration clause, not its validity," Maj. Op. at 8, given our holding in <u>Kristian</u>, I do not consider it sufficient here to resort to the doctrine of waiver in order to avoid taking into account "the interaction of the federal policy favoring arbitration with Maine contract law," Maj. Op. at 10. Indeed, <u>Kristian</u> appears to require the opposite outcome than my colleagues in the majority reach in this case. <u>See</u> <u>United States v. Guzmán</u>, 419 F.3d 27, 31 (1st Cir. 2005) ("In a multi-panel circuit, . . . newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point.").

As to the issue of waiver, the record shows that CSD presented its motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and neither party contests that the arbitration clause at issue is subject to the provisions of the FAA. <u>See</u> <u>Preston</u> v. <u>Ferrer</u>, 552 U.S. 346, 349 (2008) (noting that FAA "establishes a national policy favoring arbitration when the parties [so] contract" and that "it calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration"). Further, as the majority acknowledges, CSD emphasized the federal policy favoring arbitration to the court below, citing <u>Mitsubishi Motors Corp.</u> v. <u>Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 (1985), for the proposition that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," <u>id.</u> at 626

-18-

(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). It was upon Gove's opposition to CSD's motion to compel that the emphasis below turned to the tenet of contra proferentem for adhesion contracts, which under Maine law must be applied in the context of arbitration agreements to resolve ambiguities in contractual language against the drafter. See Barrett v. McDonald Invs., Inc., 870 A.2d 146, 150-51 (Me. 2005) (acknowledging Maine Law Court's "retreat from [its] previously broad presumption in favor of arbitration" and holding that ambiguous arbitration clauses will be interpreted against drafters). The district court then followed the Maine Law Court's preference for the contractual doctrine in ruling against the existence in this case of a valid agreement to arbitrate. See Gove v. Career Sys. Dev. Corp., 824 F. Supp. 2d 205, 210-11 (D. Me. 2011).

Given how this case evolved below, it was appropriate for CSD to devote a considerable portion of its initial brief on appeal to refuting the district court's premise that there was any ambiguity in the arbitration clause to begin with,[6] and to

---

[6]I take issue with the majority's suggestion that because CSD indicated at one point in its briefing that "there [was] no need to resort to the various rules of construction when the plain language of the agreement is unambiguous," it necessarily waived any argument based on the federal policy. See Maj. Op. at 9. It is acceptable for parties to make arguments in the alternative, see, e.g., Fed. R. Civ. P. 8(d)(2) (indicating that pleadings containing alternative statements of a claim or defense "[are] sufficient if any one [of the alternative statements] is sufficient"), and it was

highlighting other Maine case law that might persuade this court to follow a different route on appeal. Moreover, I acknowledge that CSD did not specifically rely on Kristian to support its argument in favor of arbitration in the scope analysis. However, it is evident from reading the parties' briefs on appeal, including CSD's reply to Gove's appellee brief, that CSD took steps sufficient to bring the federal policy concern to this court's attention and, hence, bring our controlling precedent to bear on the case.

To that end, in its initial briefing, CSD discussed our circuit's case law regarding the appropriate legal standard for analyzing a motion to compel arbitration. It cited to Combined Energies v. CCI, Inc., 514 F.3d 168 (1st Cir. 2008), in which we set forth our three-pronged approach for assessing motions to compel arbitration, consisting of a determination whether (1) there exists a valid agreement to arbitrate, (2) the dispute falls within the scope of that agreement, and (3) the right to arbitration was or was not waived by the movant. Id. at 171. CSD posited that only the first and second prongs of the analysis were at issue here, and that the plain language of Gove's employment application satisfied both prongs. Importantly, CSD argued that "the determination of the existence of a valid agreement to arbitrate is

sensible in this case for CSD to make its initial line of attack an argument against the ambiguity of the arbitration clause. I do not interpret CSD's discussion in this regard as relinquishing the position that any potential ambiguities found by this court should be interpreted in favor of arbitration.

-20-

analytically distinct from the scope of such [an] agreement[]." CSD then emphasized that in determining "the existence of a valid agreement to arbitrate, the courts look to state contract law," and quoted language from Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471 (1st Cir. 2011), to that effect. Id. at 475 (indicating that "principles of state contract law control the determination of whether a valid agreement to arbitrate exists") (quoting Campbell v. Gen. Dyn. Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005)). CSD then moved into its discussion of Maine contract law to support its contention that the clear language of the agreement required arbitration.

Notably, after concluding its discussion of why, under the first prong of the analysis, there existed a valid agreement to arbitrate, CSD made a separate case for why Gove's dispute with CSD falls within the scope of that agreement. That discussion included an excerpt from Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367 (1st Cir. 2011), which indicated, in relevant part, that "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts," but "[i]n carrying out this endeavor, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of

-21-

arbitration." <u>Id.</u> at 376 (internal citations and quotation marks omitted) (emphasis added).

Certainly, as the majority points out, the discussion that followed this reference relied on Maine case law and focused on why state contract principles required interpreting the arbitration clause broadly. However, CSD subsequently used its reply brief to flesh-out the idea that it had already introduced, <u>i.e.</u>, that under our case law arbitrability should be favored in the scope analysis.[7] Specifically, CSD quoted from <u>Paul Revere Variable Annuity Insurance Co.</u> v. <u>Kirschhofer</u>, 226 F.3d 15 (1st Cir. 2000), where we indicated that "generally speaking, the presumption in favor of arbitration applies to the resolution of scope questions." <u>Id.</u> at 25.

It is significant that CSD relied on <u>Paul Revere</u> because that case dealt with issues analogous to the ones currently <u>sub</u>

---

[7]CSD elaborated this point in its reply brief because it understood the argument in Gove's appellee brief as "conflating the two issues," that is, (1) whether there exists a valid agreement to arbitrate and (2) whether the scope of any such agreement covers the dispute at hand. CSD indicated that this resulted in Gove's "ignor[ing] (or perhaps attempt[ing] to avoid) the analytical distinction between the two analys[es]." It was appropriate for CSD to use its reply brief to clarify that distinction, the relevance of which I will discuss <u>infra</u>. <u>See</u> <u>United States</u> v. <u>Bradstreet</u>, 207 F.3d 76, 80 n.1 (1st Cir. 2000) ("While a reply brief is not the proper place to raise new arguments, it is proper for a court to look there for clarification.") (internal citations omitted); <u>see</u>, <u>e.g.</u>, <u>Soto</u> v. <u>State Indus. Prods., Inc.</u>, 642 F.3d 67, 70 n.1 (1st Cir. 2011) (accepting arguments in the appellant's reply brief for purpose of clarifying appellant's position); <u>Provencher</u> v. <u>CVS Pharmacy</u>, 145 F.3d 5, 8 n.2 (1st Cir. 1998) (same).

judice, and it also formed the basis for this court's holding in Kristian. In Paul Revere, the district court had applied the same contractual doctrine relied upon here (the tenet of contra proferentem for adhesion contracts) to conclude that an asserted ambiguity in the arbitration clause at issue should be interpreted against the drafters. Id. The parties whose motion for arbitration had been denied below argued on appeal that the court was required to resolve any doubts in favor of arbitration. Id. The Paul Revere panel held that, because the alleged ambiguity went to the arbitration agreement's existence, rather than its scope, "[t]he federal preference for arbitration [did] not come into play and, a fortiori, it [could not] undermine the lower court's reliance on the contra proferentem tenet." Id. An essential component to our holding in that case was the finding that the question of ambiguity presented went to the validity of the agreement to arbitrate, not its scope. See id. (determining question whether a party has standing to compel arbitration concerned "[the] right to arbitrate at all" and was, therefore, "not a scope question"). Paul Revere clarified that, in contrast, "[a] scope question arises 'when the parties have a contract that provides for arbitration of some issues' and it is unclear whether a specific dispute falls within that contract." Id. (quoting First Options v. Kaplan, 514 U.S. 938, 945 (1995)).

Although CSD did not discuss the Paul Revere holding in detail in its brief, it did refer us to First Sealord Surety, Inc. v. TLT Construction Corp., 765 F. Supp. 2d 66 (D. Mass. 2010). There, the U.S. District Court for the District of Massachusetts briefly discusses the case's holding. The summary provided in First Sealord, which CSD quoted in its brief, noted the "distinction" that our circuit has drawn in this area, describing it as follows: "[c]ontra pr[o]ferentem applies to questions such as whether a 'party has entered an arbitration agreement or whether an arbitration agreement is enforceable vel non,' but the presumption in favor of arbitration applies to the resolution-of-scope questions." Id. at 75 n.61 (quoting Paul Revere, 226 F.3d at 25) (third emphasis added).

On this basis, CSD adequately brought before this court the issue of whether or not the federal policy favoring arbitration should be applied in the scope analysis to favor arbitrability, vis-à-vis the tenet of contra proferentem for adhesion contracts. I find sufficient that CSD highlighted the distinction drawn in our case law between the court's analysis of an arbitration agreement's validity as opposed to its scope. Despite the majority's refusal to engage with it, this distinction was key to the Kristian holding that now binds us, and generally to our preceding case law on how to interpret ambiguities in arbitration clauses. See Kristian, 446 F.3d at 35 (applying "the general rule cited in Paul Revere" that

-24-

"the presumption in favor of arbitration applies to the resolution of scope questions") (quoting <u>Paul Revere</u>, 226 F.3d at 25). It is therefore decisive to the question presented to us on appeal and may be deemed "fairly included" therein. <u>See</u>, <u>e.g.</u>, <u>Jones</u> v. <u>United States</u>, 527 U.S. 373, 397 n.12 (1999) (refusing to consider waived an argument not raised in opposition to a petition for writ of certiorari, despite specific rule of the Court allowing finding of waiver, where argument "was 'predicate to an intelligent resolution of the question presented'" and indicating that "[i]n those instances, [the Court has] treated the issue not raised in opposition as fairly included within the question presented") (quoting <u>Ohio</u> v. <u>Robinette</u>, 519 U.S. 33, 38 (1996)).

In sum, because all judges on this panel conclude that Gove accepted and entered into a valid agreement to arbitrate some of the disputes between herself and CSD, our precedent is clear that Maine contract law cannot trump the federal policy favoring arbitration in our assessment of CSD's motion to compel. <u>See</u> <u>Kristian</u>, 446 F.3d at 35. Nor should we resort here to the doctrine of waiver and avoid the obvious tension between our own case law and the Maine Law Court's jurisprudence on the applicability of the <u>contra</u> <u>proferentem</u> tenet in this context. For these reasons, I dissent.