STATE OF MAINE                                          SUPERIOR COURT
ANDROSCOGGIN, ss.                                       CIVIL ACTION
                                                        DOCKET NO. CV-22-136


MICHAEL T. NEWMAN, M.D.,

        Plaintiff

        v.                                      ORDER ON MOTION TO COMPEL
                                                ARBITRATION
ST. MARY'S REGIONAL MEDICAL
CENTER, ST. MARY'S HEALTH
SYSTEM, and COVENANT HEALTH,
INC.,

        Defendants

The matter before the court is defendants St. Mary's Regional Medical Center, St. Mary's

Health System and Covenant Health, Inc.'s (collectively, "defendants") motion to compel

arbitration of all of plaintiff Michael T. Newman, M.D.'s claims.

Background

Dr. Newman was employed by St. Mary's as a physician starting on April 6, 2015.

(Laplante Aff. ¶ 4.) On or about October 2, 2014, Dr. Newman signed an Employment

Agreement with St. Mary's with additional terms contained in a letter also dated October 2,

2014. (Laplante Aff. ¶ 5.) The 2014 Employment Agreement contains the following arbitration

provision:

> 20.     Dispute Resolution. The parties agree to make a good faith attempt to
> resolve informally any controversy, dispute, or claim that may arise out of or
> relate to this agreement. Failing such informal resolution, all controversies,
> disputes, or claims arising out of or relating to this agreement will be resolved by
> arbitration before a single arbitrator (who is a lawyer) in Lewiston, Maine, in
> accordance with the Arbitration Rules of the American Health Lawyers
> Association Alternative Dispute Resolution Service, subject to the remaining rules
> of this paragraph. . . .

1

The 2014 Employment Agreement became effective on April 6, 2015, when Dr. Newman began working as a full-time employee of St. Mary's. (Laplante Aff. ¶ 6.) The agreement had a one-year term and renewed automatically on a yearly basis. (Laplante Aff. ¶ 7.)

On or about September 24, 2018, Dr. Newman signed a new Full Time Physician Employment Agreement with St. Mary's. (Laplante Aff. ¶ 8; Laplante Aff. Ex. 2.) The 2018 Employment Agreement also contained an arbitration clause with substantially similar language to the 2015 Employment Agreement:

> 8.14    *Dispute Resolution.* The Parties agree to make a good faith attempt to resolve informally any controversy, dispute, or claim that may arise out of or relate to this Agreement. Failing such informal resolution, all controversies, disputes, or claims arising out of or relating to this Agreement will be resolved in arbitration before a single arbitrator (who is a lawyer) in Lewiston, Maine in accordance with the Arbitration Rules of the American Health Lawyers Association Alternative Dispute Resolution Service, subject to the remaining terms of this Section 8.15.

(Laplante Aff. Ex. 2 ¶ 8.14.) The 2018 Employment Agreement began a one-year term on January 1, 2019, which renewed automatically from year to year. (Laplante Aff. ¶¶ 10-11.) The 2018 Employment Agreement also provides that either party may terminate the agreement without cause. (Laplante Aff. Ex. 2 ¶ 6.3.)

On or about June 25, 2021, St. Mary's provided Dr. Newman with written notice that it was terminating the 2018 Employment Agreement on October 29, 2021. (Laplante Aff. ¶ 12.) St. Mary's terminated Dr. Newman's employment effective October 29. (Laplante Aff. ¶ 13.)

On or about December 8, 2021, the Maine Human Rights Commission sent St. Mary's Health System a copy of a complaint filed by Dr. Newman with the Commission against it. (Laplante Aff. ¶ 14.) The complaint alleged a claim against St. Mary's Health System for a violation of Dr. Newman's rights under the Maine Whistleblower Protection Act based on alleged retaliation for protected whistleblower activity.

2

Standard

"Maine has a broad presumption favoring substantive arbitrability." *Roosa v. Tillotson*, 1997 ME 121, ¶ 3, 695 A.2d 1196. This requires a finding that a dispute has been subjected to arbitration if "(1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement." *V.I.P., Inc.*, 2001 ME 73, ¶ 4, 770 A.2d 95 (quotation omitted). In other words, the court must find a dispute arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* General rules of contract interpretation apply. *Id.* ¶ 3.

"[T]he language of the FAA and the MUAA are substantially similar" and Maine courts may use case law interpreting the FAA to guide their interpretation of the MUAA's similar provisions. *HL 1 LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 22, 15 A.3d 725.

Discussion

Defendants have moved to compel arbitration of Dr. Newman's complaint pursuant to the arbitration clauses in both of Dr. Newman's employment agreements.[1] Defendants argue that both the Federal Arbitration Act and the Maine Uniform Arbitration Act require the court to compel arbitration. Dr. Newman argues that the court should not compel arbitration, as he argues that he did not agree to arbitrate statutory retaliation claims.

Dr. Newman argues that the arbitration clause in the Employment Agreement is limited in scope and does not apply to his whistleblower retaliation claim. Dr. Newman does not dispute that the 2018 Employment Agreement contains a valid arbitration clause. Dr. Newman argues

---

[1] Dr. Newman argues that only the 2018 Employment Agreement should apply to his claim. Regardless, as he correctly points out, the arbitration clauses in the 2015 and 2018 Employment agreements are nearly identical, and have no differences that would be relevant to deciding this motion.

3

that because his whistleblower retaliation claim is based on a statutory right, it does not arise out of his 2018 Employment Agreement with defendants.

The arbitration clause in question is undoubtedly a general agreement to arbitrate disputes under the Employment Agreement. Therefore, the question before the court is whether Dr. Newman's whistleblower retaliation claim is "a claim that, on its face, is governed by the arbitration agreement." *V.I.P., Inc.*, 2001 ME 73, ¶ 4, 770 A.2d 95. The arbitration clause states that "all controversies, disputes, or claims arising out of or relating to this Agreement" are arbitrable. The Law Court has interpreted the phrase "arising out of" broadly and has cited with approval interpretation of the phrase "arising out of" as meaning "originating from, growing out of, flowing from, incident to or having connection with." *Acadia Ins. v. Vt. Mut. Ins. Co.*, 2004 ME 121, ¶ 8, 860 A.2d 390. "[A]n injury arises out of employment when, in some proximate way, it has its origin, its source, or its cause in the employment." *Id.*

Contrary to Dr. Newman's argument, the overwhelming weight of authority holds that discrimination claims are arbitrable under general agreements to arbitrate disputes arising out of employment agreements. The fact that these claims are statutory in origin does not take them outside the scope of the arbitration clause. The U.S. Supreme Court has held that state statutory claims of discrimination are arbitrable under general agreements to arbitrate employment disputes. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Title VII and ADA claims are also arbitrable. *Soto-Fonalledas v. Ritz-Carlton*, 640 F.3d 471, 476 (1st Cir. 2011).

Dr. Newman's claim is that he was terminated in retaliation for concerns he raised about patient care during the course of his employment with St. Mary's. Dr. Newman's concerns were therefore entirely related to conditions in the workplace and arose during performance of his job duties. The retaliation he allegedly suffered as a result was a termination of his employment,

4

which arose from his Employment Agreement with St. Mary's. This complaint arises out of the Employment Agreement and is covered by the arbitration clause.[2]

The cases that Dr. Newman cites in opposition are not on point. The first case, *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008), concerned a primary contractor's attempt to use an arbitration clause in a "Purchase Order Agreement," which defined the standard terms and conditions applicable to the subcontractor and primary contractor's performance of a contract for the U.S. Navy, to force the subcontractor to arbitrate disputes based on conduct allegedly designed to destroy the subcontractor's business by "preventing [the subcontractor] from performing its obligations under existing contracts, preventing [the subcontractor] from obtaining new contracts, damaging [the subcontractor's] good reputation, and filching [the subcontractor's] entire workforce." *Id.* at 170. The arbitration clause at issue was worded similarly to the one in this case, stating that the parties agreed to arbitrate all "claims, disputes and matters in question arising out of, or relating to, this POA." *Id.* at 172. The 1st Circuit concluded that the conduct at issue was unrelated to the parties' relationship governed by the agreement with an arbitration clause, because there was no evidence that the dispute had anything to do with either party's performance of the work governed by the contract.

The second case, *Kapothanasis v. Kapothanasis*, 2020 Me. Super. LEXIS 121 (Dec. 15, 2020), concerned a dispute between the only two shareholders in a closely held corporation. Both parties had signed a Shareholder Agreement which contained an arbitration clause that applied to any disputes arising out of that agreement. The Superior Court declined to compel arbitration on certain counts of that complaint because much of the tortious conduct alleged was based on

---

[2] Dr. Newman invites the court to adopt the public policy rationale used by the Massachusetts Supreme Judicial Court to require any agreement to submit statutory discrimination claims to arbitration to be stated in "clear and unmistakable terms." *Warfield v. Beth Israel Deaconess Med. Ctr.*, 454 Mass. 390, 398 (2009). The court declines to do so.

5

misappropriation of company property, harassment, and other types of workplace misconduct. The Shareholder Agreement did not cover the parties' workplace conduct, so the arbitration clause did not apply.

Dr. Newman is correct that *Combined Energies* and *Kapothanasis* both stand for the principle that while arbitration clauses must be given a broad interpretation, they are still limited by their terms. The key point in both cases is that the arbitration clauses were limited to the relationship arising out of the agreement, and the conduct at issue did not occur within the context of that relationship. In this case, the arbitration clause in question is contained within Dr. Newman's Employment Agreement with St. Mary's, and all of the salient conduct took place within the context of his employment with St. Mary's. The parties' general agreement to arbitrate any disputes arising out of the Employment Agreement covers this dispute.

The dispute is arbitrable. The matter shall be stayed pending resolution of the arbitration proceedings.

The entry is

> Defendants St. Mary's Regional Medical Center, St. Mary's Health System and Covenant Health, Inc.'s Motion to Compel Arbitration is GRANTED. This matter is hereby STAYED pending the results of the arbitration proceedings between the parties.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2023

_____
Harold Stewart, II
Justice, Superior Court

6